UNITED STATES of America,
Plaintiff–Appellee,

v.

Ricky Lee STRICKLAND,
Defendant–Appellant.

No. 91–6026.

United States Court of Appeals,
Tenth Circuit.

July 31, 1991.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

Teresa Black (Timothy D. Leonard, U.S.Atty., with her on the brief), Asst. U.S. Atty., for plaintiff-appellee.

Before TACHA, BARRETT, and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

Defendant-appellant Ricky Lee Strickland was charged with making a false statement in an application for a passport in violation of 18 U.S.C. §§ 1542 and 2. Strickland entered a plea of guilty. In sentencing Strickland, the district court departed from the Sentencing Guidelines based on the unique characteristics of his offense. Strickland now challenges this departure on appeal. We affirm.

On July 24, 1990, Strickland and his father visited the U.S. Post Office, Center City Station, Oklahoma City, Oklahoma. Strickland made an application for a passport in the name of Cowboy Strickland. He provided the postal clerk with a document from the State of Mississippi indicating a birth certificate for Cowboy Strickland was not on file. The clerk told Strickland he would have to complete a birth affidavit and have it notarized. Strickland and his father returned later that day and presented the completed forms indicating Strickland's first name was Cowboy, his date of birth was February 15, 1962, and his place of birth was Meridian, Mississippi. Strickland actually was born on February 15, 1956 in Dallas, Texas.

At the time he applied for the passport, Strickland was wanted by Florida authorities on a violation of probation warrant. He was also wanted by Oklahoma authorities on charges of harassing phone calls, kidnapping, forcible oral sodomy, and use of a firearm during the commission of a felony.

Strickland was arrested on July 26, 1990 for the Oklahoma charges but inadvertently was released. Special agents of the U.S. State Department located Strickland in Houston, Texas and arrested him on September 12, 1990 for knowingly making false statements on a passport application. Strickland's father was also arrested at this time for his role in the offense. He pleaded guilty and has not appealed his sentence.

Strickland's presentence report indicates the applicable Guideline for violations of 18 U.S.C. §§ 1542 and 2 is U.S.S.G. § 2L2.4. This Guideline provides a base offense level of six. The presentence report proposes a two point reduction in the offense level for Strickland's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, resulting in a total offense level of four. Strickland's criminal history computation places him in criminal history category VI. See U.S.S.G. § 4A1.1. Strickland's Guidelines' imprisonment range was six to twelve months. See id. Ch. 5, Pt. A. The presentence report, however, suggests the court may consider departing from this range based on the nature of Strickland's offense, particularly more than minimal planning and use of the passport to escape detection by law enforcement agencies.

At the sentencing hearing, the district judge stated the Sentencing Commission failed to consider specific offense characteristics present in this case in formulating section 2L2.4. The court departed from the applicable Guidelines' imprisonment range based on the following findings:

> After careful consideration, I believe that the sentencing commission failed to consider certain specific offense characteristics present in this case when formulating the guideline for this offense. Specifically, a two-level enhancement for more than minimal planning is established by the defendant's acts: taking the birth affidavit provided by the postal clerk from the post office, proceeding to

fill it out, proceeding then to have his father sign it and—and notarize it, and having it notarized, and then returning it to the post office.

Also, a two-level enhancement for obstruction of justice is applicable in this case because this court is convinced that the defendant, under all of the circumstances, clearly intended to use the passport to escape detection by law enforcement authorities, noting that the defendant had posted bond and had—and had absconded prior to sentencing on a Florida conviction for which warrants are outstanding at the time and were at the time of this offense.

The defendant changed not only his name, but also his date of birth and place of birth on the application, obviously for the purpose of deception, and, under the circumstances, that deception could have been for no purpose, practically and realistically, other than to avoid the consequences of criminal charges.

Based on the addition of four points to Strickland's offense level, the applicable Guidelines' imprisonment range was eighteen to twenty-four months. *See* U.S.S.G. Ch. 5, Pt. A. The district judge imposed a sentence of twenty-four months' imprisonment.

Although the district court stated it was enhancing Strickland's sentence, the court in fact was departing from the applicable Guidelines' imprisonment range based on the nature of Strickland's offense. Section 1B1.1 of the Sentencing Guidelines directs the sentencing court to first determine the applicable offense Guideline section. The court then is instructed to determine the base offense level and apply appropriate specific offense characteristics contained in that section. Section 1B1.1 directs the sentencing court to next apply adjustments as appropriate relating to the victim, the defendant's role in the offense, and obstruction of justice.

The district court did not adjust Strickland's sentence upward based on a specific offense characteristic. Although several Guidelines contain a two point adjustment for more than minimal planning,[1] section 2L2.4 does not. Similarly, the court did not adjust Strickland's sentence based on obstruction of justice pursuant to section 3C1.1. This provision allows for a two point increase in the base offense level "if the defendant willfully obstructed ... the administration of justice during the investigation ... of the instant offense...." Here, the district court determined an increase in Strickland's sentence was warranted because he committed the offense to avoid prosecution for prior offenses. An adjustment under section 3C1.1, however, must be based on the defendant's conduct in the offense for which he is being sentenced, not unrelated criminal conduct. *Cf. United States v. Pettit*, 903 F.2d 1336, 1341 (10th Cir.) (adjustment for defendant's role in the offense must be based on conduct relating to instant offense), *cert. denied*, — U.S. —, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990). The district court in fact departed from the applicable Guidelines' imprisonment range because he did not think section 2L2.4 adequately reflected the seriousness of Strickland's offense.

We set forth the standard for reviewing a sentencing court's upward departure from the Sentencing Guidelines in *United States v. White*, 893 F.2d 276 (10th Cir. 1990):

> In the first step, we determine whether the circumstances cited by the district court justify a departure from the Guidelines.... Our standard of review in the first step is plenary.
>
> ....
>
> In step two, we ascertain whether the circumstances cited by the district court to justify departure actually exist in the instant case. We search only for a sufficient factual basis to justify departure.

---

1. The Sentencing Guidelines specifically provide for such an adjustment in sections 2A2.2 (aggravated assault), 2B1.1 (larceny, embezzlement, and other forms of theft), 2B1.2 (receiving, transporting, transferring, transmitting, or possessing stolen property), 2B1.3 (property damage or destruction), 2B2.1 (burglary of a residence), 2B2.2 (burglary of other structures), and 2F1.1 (fraud and deceit).

. . . . .

The third and final step in our inquiry is a review of the district court's degree of departure from the Guidelines. To determine the applicable standard of review, we look to section 3742(e)(3), which mandates that we vacate a sentence outside the Guidelines if it is unreasonable. *Id.* at 277–78.

■ We begin by considering whether a departure from the Sentencing Guidelines based on the nature of Strickland's offense was justified in this case. Departures rarely should occur. U.S.S.G. Ch. 1, Pt. A, intro. comment. at 1.6–7. As we explained in *United States v. Jackson,* 921 F.2d 985, 989 (10th Cir.1990): "Because Congress set uniformity and proportionality as goals, a sentencing judge should depart from the Guidelines range only when necessary." The sentencing court may depart from the Guidelines only when there are "aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0.

Here, the district court found a habitual criminal engaged in what might be viewed, under other circumstances, as a minor paper crime. Section 2L2.4 lists only one specific offense characteristic: a two point increase in the base offense level if the defendant is an unlawful alien who has been previously deported. The only Application Note for this provision also relates to illegal entry or presence in the United States. The Sentencing Commission contemplated this Guideline would be used for sentencing illegal aliens convicted of fraudulently acquiring passports to *enter* or *remain* in the country. The commission did not contemplate its use in sentencing citizens who engage in a more serious offense by fraudulently acquiring a passport to avoid prosecution. Strickland's offense is unusual, the " 'atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, [where] the court may con-

sider whether a departure is warranted.' " *White,* 893 F.2d at 278 (quoting U.S.S.G. Ch. 1, Pt. A, intro. comment. at 1.6).

■ Having determined a departure is warranted because section 2L2.4 does not provide an appropriate punishment for Strickland's offense, we next consider whether sufficient factual support exists for the district court's conclusion that the offense involved aggravating circumstances not adequately considered by the Sentencing Commission. We therefore review for clear error the district court's factual conclusions that Strickland obtained the passport to avoid prosecution and engaged in more than minimal planning in carrying out his offense.

Strickland contends he wanted the passport for identification purposes. He was planning to marry and wanted to use the name Cowboy. Strickland, however, is unable to explain why he provided a false birth date and birth place on the passport application. In light of Strickland's extensive criminal record, including bail-jumping and probation violations, the district court's conclusion that Strickland intended to use the passport to avoid prosecution is not clearly erroneous.

The district court's factual finding that Strickland engaged in more than minimal planning also is not clearly erroneous. The Sentencing Guidelines define "more than minimal planning" as "more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 1B1.1 comment. (n. (1)f). The offense of making a false statement in an application for a passport typically is committed by one person alone submitting altered or stolen identification material. Here, Strickland engaged in an atypical amount of planning in his attempt to obtain a fraudulent passport. He submitted a "Not on File" certificate from the State of Mississippi. Strickland's application for this certificate demonstrates he was preparing to engage in passport fraud for some time before he entered the post office. When the post office official informed Strickland he would have to file a birth affidavit, Strickland involved two additional people in his scheme: he caused his

father to sign the false affidavit and secured a notary to attest to his father's signature. Taken together, these facts demonstrate Strickland engaged in more than minimal planning.

■ Finally, we consider whether the district court's degree of departure is reasonable. When the sentencing court departs from the Guidelines, it must impose a sentence that conforms to the law and policy of the Sentencing Reform Act. *Jackson*, 921 F.2d at 985. When departing on the basis of offense characteristics, the sentencing court should extend or extrapolate from other Guideline levels or principles, or employ analogies to closely related circumstances or conduct addressed by the Guidelines. *See United States v. Gardner*, 905 F.2d 1432, 1438 (10th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). In effect, the court predicts what level of punishment the Sentencing Commission would have assigned to the offense had it been considered in the formulation of the Guidelines. Although it is helpful, but not necessary, for a sentencing court to identify the analogies or extrapolations at the sentencing hearing, we may determine them de novo on appeal.

■ The district court's degree of departure based on Strickland's attempt to evade prosecution is reasonable. As noted above, section 3C1.1 of the Sentencing Guidelines provides a two point increase in the defendant's offense level if he willfully obstructed or impeded the administration of justice during the investigation, prosecution, or sentencing of the instant offense. In determining an appropriate sentence, the district court drew an analogy between this provision and Strickland's attempt to escape detection by law enforcement officials by acquiring a false passport. Because Strickland's underlying purpose in committing the offense was obstructing the administration of justice, the district court properly departed by increasing Strickland's offense level by two points.

■ The district court's departure based on Strickland's more than minimal planning is also consistent with the policies underlying the Sentencing Guidelines. Strickland's offense was analogous to a crime for which the Sentencing Commission has determined more than minimal planning is a relevant consideration in determining the proper level of punishment. The conduct for which Strickland was sentenced is similar to the conduct punishable under 18 U.S.C. § 1028, which makes it illegal to produce, possess, or transfer a false identification document which is or appears to be issued by or under the authority of the United States. Section 2F1.1 of the Guidelines, the applicable provision for sentencing violators of 18 U.S.C. § 1028, *see* U.S.S.G. § 2F1.1, comment. (n. 11), provides for a two point increase in the base offense level for more than minimal planning. In fashioning an appropriate punishment for Strickland's offense, the district court reasonably concluded his sentence should be increased because of the degree of planning in which Strickland engaged based on considerations and principles found elsewhere in the Guidelines. *See United States v. Kikumura*, 918 F.2d 1084, 1116 (3d Cir.1990) (upholding two point increase for more than minimal planning for attempted murder based on analogy to Guideline for aggravated assault). We AFFIRM.